UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID WELLS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10-CV-2080-JAR |
| | ) | |
| FEDEX GROUND PACKAGE | ) | |
| SYSTEM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| REGINALD GRAY, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:06-CV-00422-JAR |
| | ) | |
| FEDEX GROUND PACKAGE | ) | |
| SYSTEM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motions for Partial Summary Judgment as to

Employment Status [*Gray* ECF No. 209; *Wells* ECF No. 113], Defendant FedEx Ground Package

System, Inc.'s Consolidated Motion for Summary Judgment [*Gray* ECF No. 212; *Wells* ECF No.

122], and Plaintiffs' Consolidated Objections to and Motions to Strike Defendant's Consolidated

Response to Plaintiffs' Omnibus Statements of Uncontroverted Facts [*Gray* ECF No. 309; *Wells*

ECF No. 188] and Plaintiffs' Individual Statements of Uncontroverted Material Facts. [*Gray* ECF

No. 310; *Wells* ECF No. 189] The Motions are fully briefed and ready for disposition. Oral argument

on the motions for summary judgment was held on January 10, 2013. For the following reasons, the

Plaintiffs' motions for partial summary judgment as to employment status will be granted and their

motions to strike will be denied. FedEx's motion for summary judgment will be granted in part and denied in part.

### I. Background and Procedural History

FedEx Ground Package System ("FedEx") provides small package pick-up and delivery services in the United States, including the State of Missouri, through a network of pick-up and delivery drivers. Plaintiffs are former drivers/contractors. Each Plaintiff executed a "Pickup and Delivery Contractor Operating Agreement" ("OA")[1] with FedEx which they allege misclassified them as independent contractors when they were in fact employees of FedEx. Plaintiffs contend that as employees they are entitled to reimbursement of business expenses and back pay for overtime.

### A. Gray, et al. v. FedEx Ground Package System, Inc.[2]

On March 6, 2006, seven current and former drivers from Missouri filed a putative class action complaint against FedEx challenging their status as independent contractors under Missouri law. The complaint alleged claims for illegal deductions, fraudulent misrepresentations, rescission, and declaratory relief. The case was transferred to the Multi-District Litigation (the "MDL") in which similar cases against FedEx were consolidated in the Northern District of Indiana for

---

[1]FedEx operates a "ground" division and a "home" division for package delivery. Plaintiffs who drove for the "ground" division signed a FedEx Ground Package System, Inc. Pick-up and Delivery Contractor Operating Agreement; Plaintiffs who drove for the "home"division signed a FedEx Home Delivery Standard Contractor Operating Agreement. Because the parties agree the two types of OAs are substantially similar, when referencing provisions of the OA, the Court will cite to Plaintiffs' Omnibus Exhibit No. 2 (*Gray* Doc. No. 210-6; *Wells* Doc. No. 115-2), the FedEx Ground Pick-up and Delivery Contractor Operating Agreement.

[2]The *Gray* Plaintiffs are Bob Candella, Reginald Gray, Seid Huskic, Robert Hansen, Jamie Tenison, Bob Arbutti, Gary Austin, Bob O'Keefe, Michael Jost, Marcus Holmes, Rich Mitchell, Rick Hendricks, Luther McLain, James Tichenor, Carl Tucker, Kevin Pour, Mike Sheffer, Don Blackmon, Roy Patton, Jr, Jammie Hill, John Waweru, Bobby Brown, Tom Skundrich, Jr, Mike Sanders, and Bob Lee Baker.

discovery and class certification purposes. *In re FedEx Ground Package Sys., Inc.*, No. 3:05-MD-527-RM (N.D. Ind.).

On April 2, 2007, the *Gray* Plaintiffs moved for class certification of their statutory claim for unauthorized wage deductions, Mo.Rev.Stat. § 290.010, their common law claims for rescission and unjust enrichment, and their claim for declaratory relief. The MDL court denied class certification on March 25, 2008, finding that under Missouri law, the question of employment status could not be decided on a class-wide basis. In re FedEx Ground Package System., Inc., Employment Practices Litigation, 273 F.R.D. 424, 475 (N.D. Ind. 2008). In September 2008, following denial of class certification, the *Gray* Plaintiffs filed a Second Amended Complaint, naming sixteen additional plaintiffs. Four more plaintiffs were added in a Third Amended Complaint, which was filed in April 2010. After the case was remanded back to this Court, the Fourth Amended Complaint adding one additional Plaintiff was filed on October 30, 2011, and a Fifth Amended Complaint was filed on November 9, 2011.

On December 15, 2011, this Court granted FedEx's motion to dismiss Plaintiffs' Fifth Amended Complaint as to the declaratory judgment claim, construed the illegal deductions claim to include a claim for overtime pay, and granted Plaintiffs leave to amend their complaint. (*Gray* Doc. No. 136) Plaintiffs' Sixth Amended Complaint alleges causes of action for fraudulent misrepresentation (Count I) and overtime (Count II) under Mo. Ann. Stat. §§ 290.527 and 290.505. (Gray Sixth Amended Complaint ("Gray Compl."), *Gray* Doc.. No. 142 ) On FedEx's motion, this Court dismissed the wage claims of four Plaintiffs as time-barred. (*Gray* Doc. No. 157).[3]

**B. Wells, et al. v. FedEx Ground Package System, Inc.**[4]

---

[3] Huskic, Hansen, Mitchell, and McLain

[4] The *Wells* Plaintiffs are David Wells, Thomas Redel, Jonathan Thurston, Marvin Bowden, Brad Kennedy, Steven Miller, Seth Borders, Dale Jacobson, Leo Violett, Paul

On November 3, 2010, 24 current and former drivers from Missouri filed suit against FedEx challenging their status as independent contractors under Missouri law and asserting claims for illegal deductions/overtime (Count I); fraudulent misrepresentation (Count II); rescission (Count III); and declaratory judgment (Count IV).[5] Three additional Plaintiffs subsequently joined the case on May 10, 2011. *Wells* was never part of the MDL.

Plaintiffs move for partial summary judgment on the issue of employment status. FedEx moves for summary judgment on all Counts of Plaintiffs' Sixth Amended Complaint in *Gray*: Fraudulent Misrepresentation (Count I) and Claims for Wages Under Sections 290.527 and 290.505, R.S.Mo. (Count II), and on all Counts of Plaintiffs' Amended Complaint in *Wells*: Illegal Deductions from Wages (Count I),1 Fraudulent Misrepresentation (Count II), Rescission (Count III), and Declaratory Judgment (Count IV).

## II. Legal Standard

Summary judgment is proper if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. <u>Torgerson v. City of Rochester</u>, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (internal citations and quotation marks omitted). The movant bears the initial burden of informing the district court of the basis for its motion, and must identify those portions of the record

---

Fickbohm, Alan Dees, William Taube, David Moore, Richard Svitak, Todd Cooke and Scott Smith.

[5] Eight Plaintiffs have overtime claims remaining because the Court dismissed the claims of eight Plaintiffs (Thurston, Bowden, Kennedy, Miller, Borders, Adams, Violett and Dees) as time-barred. (*Wells* Doc. No. 34, pp. 4-5, 8-9). One Plaintiff (Svitak) voluntarily dismissed his wage claim. (*Wells* Doc. No. 38) Fourteen Plaintiffs have fraudulent misrepresentation claims remaining because the Court dismissed the claims of three Plaintiffs (Kennedy, Thurston and Violett) as time-barred. (*Wells* Doc. No. 34, p. 11). Two Plaintiffs (Smith and Wells) have a rescission claim remaining, as the Court dismissed the rescission claims of the other *Wells* Plaintiffs because their OAs had been fully performed and thus could not be rescinded. (<u>Id.</u>)

which it believes demonstrate the absence of a genuine issue of material fact. Id. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. Id. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Id. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Id. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Id. Where the record taken as a whole could not permit a jury to find for the nonmoving party, there is no genuine issue for trial.

Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. Husinga v. Federal-Mogul Ignition Co., 519 F.Supp.2d 929, 942 (S.D. Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." Wermager v. Cormorant Township Bd., 716 F.2d 1211, 1214 (8th Cir. 1983). In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Bingaman v. Kansas City Power & Light Co., 1 F.3d 976, 980 (10th Cir.1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).

**III. Discussion**

**A. Plaintiffs' Consolidated Objections to and Motions to Strike Defendant's Consolidated Response to Plaintiffs' Omnibus Statements of Uncontroverted Facts and Plaintiffs' Individual Statements of Uncontroverted Material Facts.**

As a threshold matter, Plaintiffs have moved to strike FedEx's consolidated responses to their statements of material facts on the grounds that they are non-responsive and supported by self-serving declarations, legal conclusions and improper statements of opinion. Plaintiffs point to declarations filed by various FedEx managers which they contend contradict their earlier deposition testimony concerning certain aspects of control FedEx exercised over Plaintiffs. In response, FedEx acknowledges that a disputed issue of material fact cannot be created through an affidavit that directly contradicts previous deposition testimony, see, e.g., Page v. Fifth Third Bank, 2009 WL2252557 at *3 (E.D. Mo. July 29, 2009), but contends that is not the case here, where the kind of direct contradictions addressed in cases such as Page do not exist simply because one witness's testimony differs from another's. (*Gray* Doc. No. 319; *Wells* Doc. No. 197, p. 3)

By way of example, FedEx points to the declaration of terminal manager Mark Kanter, wherein he states that "contractors had the option of using the scanner leased from FedEx Ground to code their packages." (*Gray* Doc. No. 320-4; *Wells* Doc. No. 198-2, Kanter Decl., ¶ 32) In his deposition, however, Kanter testified that every driver was required to have a scanner. (*Gray* Doc. No. 320-3; *Wells* Doc. No. 198-2, Kanter Depo. 87:10-88:8) The fact that every driver was required to have a scanner is a separate matter from where the scanner was obtained. There is nothing contradictory about these statements. Likewise, Kanter stated that "scanners were not used by the managers to track the contractors." (Kanter Decl., ¶ 6) In his deposition, however, he testified he could and did track the drivers' package delivery throughout the day for several reasons, including "to see how somebody is doing. If he has got a lot of stops. If he is going to get done today," because he wanted to "make sure all of the packages got delivered." (Kanter Depo. 238:20- 240:4) This does not appear to actually contradict his earlier testimony in that he may be making a distinction between tracking contractors and tracking package delivery.

Plaintiffs also maintain that a number of FedEx managers were unable to recall on deposition specific training on FedEx policies and procedures, although they all testified they had received some training. (*Gray* Doc. No. 309, 310; *Wells* Doc. No. 188, 189) In particular, Plaintiffs point to the declaration of FedEx manager Kearce Peters, wherein she stated that she attended managerial training classes offered by FedEx, and that in those training classes, emphasis was placed on "the importance of adhering to the terms of the [Operating Agreement]." She also stated that she was taught that "FedEx Ground employees may not dictate the manner and means of package delivery to contractors, but must focus only on the ultimate results sought under the OA." At her deposition, Peters testified she had received training on FedEx's policies and procedures but did not recall any specifics. The purported inconsistencies between Peters' declaration and deposition do not appear contradictory so much as elaboration on information already conveyed.

Generally, a court is required to consider an otherwise admissible affidavit, unless that affidavit contradicts previous deposition testimony. Popoalii v. Correctional Medical Services, 512 F.3d 488, 498 (8th Cir. 2008). The court must exercise extreme caution and carefully articulate its reasons for finding an affidavit contradictory of earlier testimony. Pimentel v. St. Louis Public Schools, 2011 WL 128788, at *1 -2 (E.D.Mo. Jan. 14, 2011) (citing Mountain Pure, LLC v. Bank of America, N.A., 481 F.3d 573, 577 (8th Cir. 2007)). A court should not strike a post-deposition affidavit that "simply restates information already contained in deposition testimony or elaborates on information already conveyed, that does not actually contradict the affiant's earlier testimony, that includes statements "that [the affiant] was confused in [the earlier] deposition or where the affiant needs to explain portions of [the earlier] deposition testimony that were unclear." Pimental, 2011 WL 128788, at *1 (internal quotations and citations omitted)

The Court has considered the parties' arguments and in its discretion will deny Plaintiffs' motions to strike. The Court will consider FedEx's declarations since they aid the Court in

determining whether there is a genuine issue of material fact on the issue of Plaintiffs' employment status. <u>Likes v. DHL Express (USA), Inc.</u>, 2012 WL 8499732, at *1n.1 (N.D.Ala. Mar. 7, 2012).

### B. Plaintiffs' Motions for Partial Summary Judgment as to Employment Status

Plaintiffs submit that the undisputed facts of these cases demonstrate that FedEx controlled and managed their routes and businesses to such an extent that they were employees of FedEx and not independent contractors. According to Plaintiffs, FedEx required packages to be delivered and picked up at certain times, dictated the drivers' dispatches, set the pricing, and even controlled what they wore. Essentially, Plaintiffs argue they had no distinct businesses of their own.

In opposition to Plaintiffs' motions, FedEx points to a number of undisputed facts that demonstrate Plaintiffs are independent contractors as a matter of law. In particular, Plaintiffs perform their duties pursuant to an Operating Agreement that gives them the right to hire their own employees and "work" entirely through someone else's labor. FedEx maintains that Plaintiffs manage and control substantial investments in their business, set their own hours, choose their own routes, and select whatever methods they want to complete their work. They can buy and sell their jobs and FedEx has no right to unilaterally terminate their contracts.

Whether an individual is an employee or an independent contractor is generally considered a question of fact. <u>Huggins v. FedEx Ground Package Systems, Inc.</u>, 592 F.3d 853, 857 (8th Cir. 2010). However, when the facts are undisputed and "only one reasonable conclusion can be drawn" from those facts, the issue may be decided as a matter of law. <u>Id</u>. The right to control "is the pivotal factor in distinguishing between employees and other types of workers. If the employer has a right to control the means and manner of a person's service—as opposed to controlling only the results of that service—the person is an employee rather than an independent contractor." <u>Leach v. Board of Police Com'rs of Kansas City</u>, 118 S.W.3d 646, 649 (Mo.Ct.App. 2003) (citing <u>Seaton v. Cabool Lease, Inc.</u>, 7 S.W.3d 501, 505 (Mo.App.1999)).

"The concept of the "right to control" is more intricate in Missouri than most other states," see In re FedEx, 273 F.R.D. at 530, and requires consideration of the following eight factors: (1) the extent of control, (2) the actual exercise of control, (3) the duration of the employment, (4) the right to discharge, (5) the method of payment, (6) the degree to which the alleged employer furnished equipment, (7) the extent to which the work is the regular business of the employer, and (8) the employment contract. Id. See also Skidmore v. Haggard, 110 S.W.2d 726, 729-30 (Mo. 1937); Trinity Lutheran Church v. Lipps, 68 S.W.3d 552, 559 (Mo.Ct.App. 2001). No one factor is dispositive; the Court must consider the facts as a whole when making a determination regarding employment status. Hamilton v. Palm, 621 F.3d 816, 818-19 (8th Cir. 2010) ("Under Missouri law, the critical right-to-control issue is affected by many factors "none of which is in itself controlling.") Both sides have extensively briefed this eight factor test, and believe the factors weigh in their favor.

**(1) Extent of Control**

To determine extent of control, the Court looks to the terms and provisions of the OA to see what powers FedEx reserved for itself. Nunn v. C.C. Midwest, 151 S.W.3d 388, 400 (Mo.Ct.App. 2004). Plaintiffs acknowledge that certain sections of the OA specify they will be independent contractors, and that the manner and means of their work will not be controlled by FedEx; however, they contend that the balance of the OA details the virtually unlimited control FedEx exercised over them, including, *inter alia*, their vehicles, day-to-day operations, and delivery routes. (*Gray* Mem. in Supp., Doc. No. 210; *Wells* Mem. in Supp., Doc. No. 113, p. 6)

For example, although Plaintiffs provided their own vehicles, FedEx requires each vehicle to meet certain specifications (OA, ¶ 1.1), to be painted "FedEx White," and to be marked with the FedEx logo and insignia. (OA, ¶ 1.5) Plaintiffs' vehicles had to be maintained in a "clean and presentable fashion free from body damage and extraneous markings." (OA, ¶ 1.12) Plaintiffs pay the costs of operating and maintaining their vehicles, including repairs, cleaning, fuel, tires, taxes,

licenses and insurance, and must provide FedEx with proof of inspection and maintenance. (OA, ¶¶ 1.2, 1.3, 1.6) Plaintiffs must use their trucks exclusively in the service of FedEx, or mask the logo if the truck is used for any other purpose. (OA, ¶ 1.4, 1.5) FedEx reserves the right to remove Plaintiffs' vehicles from service if it finds the vehicles deficient in any way, a practice known as "deadlining." (OA, ¶ 1.2) If a vehicle was deadlined, Plaintiffs were required, at their expense, to provide alternative equipment, subject to FedEx approval, to meet their obligations under the OA. (Id.) Plaintiffs were not permitted to own or operate additional vehicles without FedEx's consent, or to allow drivers who were not pre-approved by FedEx to assume their job duties, even temporarily. (OA, ¶¶ 2.1, 2.2)

Plaintiffs were required to wear FedEx uniforms, which had to be maintained in good condition, and otherwise had to agree to keep their personal appearance consistent with "reasonable standards of good order" as set by FedEx. (OA, ¶ 1.12) FedEx agreed to familiarize Plaintiffs with its quality service procedure, and reserved the right to have its management employees travel with Plaintiffs four times each year to verify they were meeting FedEx standards. (OA, ¶ 1.14)

On a daily basis, Plaintiffs were required to prepare driver logs, inspection reports, fuel receipts, and shipping documents, and file the originals with FedEx at the end of each business day. (OA, ¶ 1.7) Plaintiffs were also required to return any collected charges and undeliverable packages to FedEx at the end of each business day, and provide such notations as FedEx required in order to document the package locations and reasons for non-delivery. (OA, ¶¶ 1.8. 1.11) Plaintiffs were responsible for daily pick-up and delivery of FedEx packages in their Primary Service Areas ("PSA"s), or routes, assigned to them by FedEx. (OA, ¶ 1.10) Plaintiffs were required to make reasonable efforts to "maintain and increase" business within their PSAs. (Id.) Through FedEx's Flex Program, FedEx could "shift" packages from outside each Plaintiff's PSA for pick-up and delivery based on the volume of such packages on a daily basis. (OA, ¶ 9) Plaintiffs were paid a

daily flex fee for participating in the Flex Program. (Id.) FedEx also reserved the right to reconfigure PSAs and reassign packages to another driver if the volume of packages in the service area exceeded the amount a driver could reasonably be expected to handle on a given day. (OA, ¶ 5.2) The OA requires compensation to the driver if reconfiguration resulted in less customers or accounts. (OA, ¶ 5.3)

In opposition to Plaintiffs' motion, FedEx responds that the core provisions of the OA either address the results Plaintiffs agreed to achieve, and not the physical performance of their work, or are directed at ensuring compliance with government regulations. (*Gray* Doc. No. 279; *Wells* Doc. No. 158 ("Consol. Opp."), pp. 4-9). In particular, the requirements that Plaintiffs inspect and maintain their vehicles, prepare daily driver logs and reports, and provide shipping information, are directed at ensuring compliance with the regulatory control and oversight of the Department of Transportation and the Federal Motor Carrier Safety Administration. (Id., p. 5) Likewise, FedEx's provision that Plaintiffs not use their vehicles for other customers while carrying FedEx packages, and that Plaintiffs paint their vehicles a certain color and mark them with certain insignia, also stem from federal regulations. (Id., pp. 6-7) FedEx also points out that many courts have recognized that the sort of uniform and branding provisions found in the OA do not establish that it controlled Plaintiffs' work methods. Rather, they foster the professional image and good reputation of FedEx and allow consumers "to be assured of their bona fides." (Consol. Opp., pp. 9-10, citing Herman v. Mid-Atlantic Installation Servs., Inc., 164 F.Supp.2d 667, 673 (D.Md. 2000)).

Plaintiffs reply that while an employer's efforts to comply with government regulations is not in and of itself sufficient to prove employee status, see K&D Auto Body, Inc. v. Division of Employment Sec., 171 S.W.3d 100, 106 (Mo.Ct.App. 2005), "pervasive control by an employer [which exceeded] to a significant degree the scope of the government imposed control" evidences employee status. Id. (*Gray* Doc. No. 308; *Wells* Doc. No. 181 ("Reply Memo"), pp. 10-11)

As discussed above, the determination of employment status cannot be made based on a review of the OA alone. In Missouri, the "right to control" is defined with reference to the *actual* exercise of control.

### (2) Actual exercise of control

The analysis of actual control requires a driver-by-driver, terminal-by-terminal, supervisor-by-supervisor analysis that is unnecessary in most other states. In re FedEx, 273 F.R.D. at 530 (citing Leach, 118 S.W.3d at 649). To that end, Plaintiffs have submitted individual statements of uncontroverted material facts with attached affidavits, deposition testimony, responses and objections to FedEx's interrogatories and supporting exhibits (Plaintiffs' Individual Statement of Uncontroverted Material Facts ("Plaintiffs' Indiv. SOF"), *Gray* Doc. Nos. 213, 228-251, 256; *Wells* Doc. Nos. 113-1-113-18), as well as an Omnibus Statement of Uncontroverted Material Facts with attached exhibits ("Plaintiffs' Omnibus SOF") containing factual statements that apply to all of the cases. (*Gray* Doc. No. 210-1; *Wells* Doc. No. 116)

As evidence of actual control, Plaintiffs focus on a "comprehensive network" of policies and procedures which they contend were developed and implemented by FedEx to manage and control their daily activities. In particular, Plaintiffs point to Contractor Relations POLICY-007 (Plaintiffs' Omnibus Ex. 22), which applies to FedEx managers and employees responsible for maintaining relationships with pick-up and delivery drivers.. (*Gray* Mem. in Supp., pp. 19-25; *Wells* Mem. in Supp., pp. 20-27)

Pursuant to these policies, prospective drivers were subjected to background checks, credit reports, and drug screening. (Plaintiffs' Omnibus Exs. 9-12; 30-32) In addition, FedEx maintained an extensive training program, called Quality P&D Learning, for prospective or temporary drivers who lacked the requisite experience. (Plaintiffs' Omnibus Ex. 13; Plaintiffs' Indiv. SOF, ¶ C.4.f)

Plaintiffs were required to leave from and return to the terminal each day. Home delivery drivers were required to work Tuesday through Saturday; ground delivery drivers were required to work Monday through Friday. (Plaintiffs' Indiv. SOF, ¶ C.3.a) Plaintiffs were required to work on the days before and after holidays, and had to "buy" time off through Contractor Time-Off Program. Plaintiffs' Indiv. SOF, ¶ C.3.i)

Plaintiffs were required to carry and use scanners on their routes, maintain clean vehicles, wear FedEx uniforms, submit their vehicles to D.O.T. inspections, and submit to random drug screening. (Plaintiffs' Omnibus Exs. 26-27; Plaintiffs' Omnibus SOF, ¶¶ 30-31, 62; Plaintiffs' Indiv. SOF, ¶¶ B.4 and C.2.a-e) FedEx provided these items to Plaintiffs through its Business Support Package (OA, ¶ 7) and deducted the cost of each item through their weekly settlements. (Plaintiffs' Omnibus Exs. 26, 27; Plaintiffs' Indiv. SOF, ¶ E.3). The Business Support Package, characterized by Plaintiffs as a "company store," is an elective program; however, Plaintiffs contend that in practice, it was the only way to obtain the items provided and required by Fed Ex and charged to Plaintiffs. (*Gray* Mem. in Supp., pp. 17-18; *Wells* Mem. in Supp., p. 14)

In addition, Plaintiffs contend that the methods and manner of package delivery was closely monitored and controlled. FedEx assigned each Plaintiff a number of packages to deliver each day, told each Plaintiff how and when each package must be delivered, and could even contact Plaintiffs on their routes to direct them to pick up packages. (Plaintiffs' Indiv. SOF ¶¶ C.1.a-k, C.4.b, i, I.10) FedEx procedures also covered such matters as obtaining signatures, where to leave packages when recipients were not available, and when packages could be released under these circumstances. (Plaintiffs' Omnibus Exs. 13 and 14; Plaintiffs' Indiv. SOF, ¶¶ C.1.a-e, i)

Plaintiffs who drove for the home delivery division were required to perform a morning check-out before leaving the terminal. (Plaintiffs' Omnibus Exs. 38-39; Plaintiffs' Omnibus SOF, ¶¶ 41-42) FedEx would obtain certain information from each Plaintiff, including settlement reports,

vehicle inspection reports, and driver's logs, and ensure Plaintiffs had sufficient door tags, delivery notices, signature release cards, and spare batteries for their scanners. (Plaintiffs' Omnibus Ex. 38; Plaintiffs' Omnibus SOF, ¶ 41; Plaintiffs' Indiv. SOF, ¶ I.11) Plaintiffs were also required to check-in at the end of each day. (Plaintiffs' Omnibus Ex. 39; Plaintiffs' Omnibus SOF, ¶ 42; Plaintiffs' Indiv. SOF, ¶¶ C.2.h-i) Upon return to the terminal, Plaintiffs who drove for the ground division, and some home delivery drivers, were required to turn in pending tracers, settlement records, delivery manifests, accident packets, call tags, driver logs, daily vehicle inspection reports, and their scanners. (Plaintiffs' Omnibus Ex. 39; Plaintiffs' Indiv. SOF, ¶¶ C.2.h-i) Likewise, Plaintiffs who drove for the home delivery division were required to upload their scanners' information each night before a certain time. (Plaintiffs' Indiv. SOF, ¶¶ C.2.h-i)

To ensure compliance with FedEx procedures, FedEx terminal personnel could ride with Plaintiffs on their daily routes (customer service rides) to audit their performance. (Plaintiffs' Omnibus Ex. 36; Plaintiffs' Omnibus SOF, ¶¶ 12, 39; Plaintiffs' Indiv. SOF, ¶ C.4.l) Contractor Customer Service Ride Worksheets, as well as customer complaints or comments about Plaintiffs' performance, were kept in files FedEx maintained on its drivers. (Plaintiffs' Omnibus Ex. 36)

FedEx reviewed Plaintiffs' overall operations, package "flexing," customer complaints, problem solving, as well as aspects of each Plaintiff's performance, through "Business Discussions." (Plaintiffs' Omnibus Exs. 18, 46; Plaintiffs' Omnibus SOF, ¶¶ 25, 49) FedEx also required Plaintiffs to prepare and submit an annual "business plan" outlining FedEx's expectations of that Plaintiff and providing a record of what FedEx and Plaintiffs had committed to do for the coming year. (Plaintiffs' Omnibus Ex. 14; Plaintiffs' Indiv. SOF, ¶¶ C.4.b-c) Contract Termination Guidelines provided direction to FedEx management on how to terminate an OA and retake control of Plaintiffs' routes. (Plaintiffs' Omnibus Exs. 15, 16 and 17)

Plaintiffs also point to a number of FedEx programs they maintain were inconsistent with independent contractor status, including the Contractor Time-Off Program, which permitted them to buy time off each year from FedEx (Plaintiffs' Omnibus Ex. 37; Plaintiffs' Indiv. SOF, ¶¶ C.3.c-d); a Maintenance Loan Program, which permitted ground delivery drivers to borrow money from FedEx for specific maintenance repairs required on their vehicles (Plaintiffs' Omnibus Ex. 44); and a plan through which a prospective contractor could purchase a vehicle through FedEx-approved vendors and FedEx-approved financing institutions. (Plaintiffs' Omnibus Ex. 45) In addition, FedEx provided Plaintiffs with bonuses based on performance and years of service. (Plaintiffs' Indiv. SOF, ¶ E. 6; Plaintiffs' Omnibus Exs. 14; 42)

Further, Plaintiffs identify several unwritten policies and procedures regarding FedEx control through scanners, pick-up windows, delivery sequence, restrictions on route sales and management contact during operation of routes. (*Gray* Mem. in Supp., pp. 25-27; *Wells* Mem. in Supp., pp. 27-29) Plaintiffs were required to record a check-in and check-out time through their scanners. (Plaintiffs' Indiv. SOF, ¶ C.2.e) FedEx management could track Plaintiffs' progress because the scanners tracked the time and location of each delivery or attempted delivery of each FedEx package. (Plaintiffs' Indiv. SOF, ¶¶ C.2.e and C.4.i)

"Pick-up windows," windows of time set by FedEx's sales department during which Plaintiffs were required to pick up certain packages, required Plaintiffs to be in a certain location at a certain time. As a result, the timing of these pick-up windows dictated the scheduling and sequence of delivery of each Plaintiff's route. (Plaintiffs' Omnibus SOF, ¶¶ 2, 64; Plaintiffs' Indiv. SOF, ¶¶ C.1.g, i, and I.10) FedEx ground drivers were required to pick up packages at various locations on their route at specified times, and often later than 5:00 p.m. (Plaintiffs' Indiv. SOF, ¶¶ C.1.g, G.1 and I.10).

Ground drivers' delivery trucks were loaded for them at FedEx terminals before they left each morning on their routes. (Plaintiffs' Indiv. SOF, ¶¶ C.1.j, C.3.e, C.4.j-k, and I.4-8) Plaintiffs played no role in the loading procedure, which effectively dictated their routes since the trucks had to be unloaded in reverse order. (Plaintiffs' Omnibus SOF, ¶ 56; Plaintiffs' Indiv. SOF, ¶¶ C.1.j, C.3.e, C.4.k, and I.7, 9) Plaintiffs who drove for the home division were responsible for loading their own vehicles (Plaintiffs' Omnibus SOF, ¶ 60; Plaintiffs' Indiv. SOF, ¶¶ I.8 and I.9); however, FedEx provided them with explicit "turn-by-turn" directions which they were expected to follow on a daily basis. (Plaintiffs' Omnibus SOF, ¶ 60)

Plaintiffs' departure times were also controlled by FedEx terminal management. In many cases, when trucks delivering packages from FedEx "hubs" were late in arriving at the terminals, resulting in delays in loading Plaintiffs' vehicles, Plaintiffs were kept at the terminals and not allowed to depart until after 10:00 a.m. (Plaintiffs' Indiv. SOF, ¶ C.3.b)

Plaintiffs were not permitted to sell their routes without prior approval from FedEx. (Plaintiffs' Individual SOF, ¶¶ G.5 and H.4) Likewise, FedEx threatened to take Plaintiffs' routes away on a number of occasions for various reasons. (Plaintiffs' Indiv. SOF, ¶ H.2)

In response, FedEx argues that Plaintiffs have no evidence that the substance of these policies and procedures were actually followed by FedEx management given the testimony of FedEx's terminal managers that the OA controlled their interaction with contractors and that the policies and procedures were considered reference materials only. (*Gray* Doc. No. 158; *Wells* Doc. No. 279 ("Consol. Opp."), pp. 15-16) Further, even if the policies and procedures had been followed by management, FedEx contends they are not evidence of control over the means and manner of Plaintiffs' work. (Id., pp. 18-22) Many of these policy documents relate to efforts to comply with federal regulations and are not evidence of control for that reason. See, K&D Auto Body, 171 W.W.3d 106. Other policies relate to results that Plaintiffs promised to provide under the OA, i.e.,

providing a "suitable" vehicle (OA, ¶ 1.1) and presenting "a consistent image and standard of service to customers." (OA, ¶ 1.12) Policies pertaining to service standards go to the results the contractors agreed to provide under the OA, and not to the manner and means of performance. Intermittent monitoring of the results of a contractor's work, such as the "customer service rides," does not create an employee relationship. See State ex rel. MW Builders, Inc. v. Midkiff, 222 S.W.3d 267, 271-72 (Mo. 2007) (determining that sub-contractor was an independent contractor even though general contractor visited construction site weekly to review progress and see whether work and results conformed to architectural plans). Resulting feedback from FedEx was in the form of "suggestions" and not tantamount to the actual exercise of control. See also Williamson v. SW Bell Tel. Co., 265 S.W.2d 354, 359 (Mo. 1954) ("[I]t is necessary to distinguish between authoritative direction and control and mere suggestion as to details."). (Consol. Opp., pp. 20-21)

Plaintiffs reply that the reasons for an employer's control and supervision over its workers, such as service standards and customer demands, are not relevant to the determination of employment status. (*Gray* Doc. No. 308; *Wells* Doc. No. 181 ("Plaintiffs' Consol. Reply"), pp. 12-13) Plaintiffs also point to the deposition testimony of a number of FedEx terminal managers, and Policy 007 itself, which specifically states that managers could be terminated for not following such policy and the procedures promulgated under it. (Plaintiffs' Consol. Reply, p. 10, citing Plaintiffs' Omnibus Ex. 27, p. 3; FedEx Rule 30(b)(6) Depo. 29:12-31:14; Kanter Depo. 66:16-67:22, 68:11-69:21, 124:7-125:19, 127:12-130:12, 137:7-18, 145:10-146:3, 168:3-7, 184:19-23, 208:12-14, 218:5-219:6, 228:13-230:8; Peters Depo. 70:14-71:13, 73:12-74:13; Wallace Depo., 74:10-17).

After reviewing the terms of the OA with reference to the affidavits and deposition testimony of Plaintiffs and FedEx managers and other evidence presented, the Court finds that both the extent of control and actual exercise of control factors weigh in favor of employee status. FedEx screened potential drivers and trained them in the most fundamental aspects of their jobs, such as courteous

treatment of the FedEx customers, where to leave a package, and whether to obtain a customer's signature on a package. Similar evidence of control over hiring and training has been found to support a reasonable inference that FedEx had a right to control its drivers' performance. See, Huggins, 592 F.3d at 858. Plaintiffs were doing business in FedEx's name, wearing the FedEx uniform, and driving vehicles with FedEx logos. The right to determine and enforce driver and vehicle appearance and vehicle suitability standards also favors employee status. In re FedEx Ground Package System, Inc. Employment Practices Litigation, 869 F.Supp. 2d 942, 980 (N.D. In. 2012). Plaintiffs operated with the assistance and guidance of FedEx. FedEx assigned the routes, established times of pick-ups and deliveries, and provided loading, sales and customer service operations. FedEx audited Plaintiffs' compliance with its standards through customer service rides. "Daily assignments" demonstrates control indicative of employee status, as does the monitoring of Plaintiffs' workloads and consequent reconfiguring of their routes. Burgess v. NaCom Cable Co., 923 S.W.2d 450, 454 (Mo.Ct.App. 1996) (periodic communication with installer by radio dispatch throughout the day is a clear emblem of control and scheduling benefit to cable company). See also Williams v. Sodexho Operations, LLC, 2009 WL 2592312, at *3-4 (E.D. Mo. Aug. 20, 2009) (authority and promulgation of standards for supervision and performance reviews demonstrates control). In addition, FedEx provides programs to decrease insurance cost and vehicle maintenance, as well as performance based incentives such as the CCS bonuses, the Service Guarantee Program and the HR-10 defined contribution plan. (OA, ¶¶ 8, 10) Such incentives are also indicative of employee status.

### (3) Duration of employment

Independent contractors are typically hired by the job to complete a specific task. State ex rel. Sir v. Gateway Taxi Management Co., 400 S.W.3d 478, 486 (Mo.Ct.App. 2013). Plaintiffs argue that none of them were hired by the job; rather they were hired by the year(s), which is the direct

opposite of independent contractor status, citing <u>Nunn</u>, 151 S.W.3d at 401 (truck driver was an "employee" rather than an independent contractor, for purposes of workers compensation, where he worked continuously for two years and so was not hired for just one job). The OAs provide for terms of one, two or three years and automatically renew if there is no notice of non-renewal. (OA, ¶ 11; Plaintiffs' Indiv. SOF, ¶ F.1) This factor weighs in favor of employee status. Moreover, while the OA does not necessarily contemplate a long-term relationship, <u>In re FedEx</u>, 869 F.Supp. 2d at 984, many of the Plaintiffs worked for FedEx for several years, and their OAs were automatically renewed. (Plaintiffs' Indiv.SOF, ¶ A.1) The length and indefinite nature of the Plaintiffs' tenure with FedEx also points to an employment relationship. <u>See</u>, <u>Narayan v. EGL, Inc</u>., 616 F.3d 895, 903 (9th Cir. 2010).

.     **(4) Right to discharge**

The inability to terminate a worker at will supports independent contractor status. <u>In re FedEx</u>, 869 F.Supp.2d at 986 (citing <u>McDonnell v. Music Stand, Inc</u>., 886 P.2d 895, 899 (Kan.Ct.App. 1994). FedEx maintains it cannot unilaterally terminate its relationship with Plaintiffs; rather, FedEx can only terminate the OA without the contractor's consent in limited circumstances, such as if the contractor breaches the terms of the agreement. (OA, ¶¶ 3(a), (b), 12.1, 12.3). Further, if a contractor disputes his termination, the OA provides that the dispute can be submitted to arbitration. (OA, ¶¶ 12.1, 12.3) FedEx observes that Missouri courts have found that less restrictive termination provisions favor independent contractor status. (Consol. Opp., p. 30, citing <u>Kirksville Pub'g Co. v. Div. of Emp't Sec</u>., 950 S.W.2d 891, 899 (Mo. Ct. App. 1997) (holding that the right to discharge factor supported contractor status even though the company was only required to provide thirty days' notice to discharge a motor carrier)).

Plaintiffs argue that even though the OA provides for termination with cause, there are no limitations on the grounds for non-renewal of the OA. (OA, ¶ 11) Plaintiffs assert that FedEx told

many of them that they either had to sell their routes or FedEx would send their contracts up for non-renewal or termination and take their routes away from them. (Plaintiffs' Indiv. SOF, ¶¶ H.1, 2) A number of the *Wells* Plaintiffs were either non-renewed or terminated by FedEx. (Plaintiffs' Indiv. SOF, ¶¶ H.3-4). Based on an identical OA, the California Court of Appeals in <u>Estrada v. FedEx Ground Package System, Inc.</u>, 154 Cal.App. 4th 1 (Cal.App. 2007), concluded the drivers could be terminated "at will. <u>Id</u>. at 9. <u>See also</u> <u>Narayan</u>, 616 F.3d at 903 (contract signed by plaintiff drivers which contained automatic renewal clauses and could be terminated by either party upon thirty-days notice or upon breach of the agreement, is a substantial indicator of an at-will employment relationship). This factor weighs in favor of employee status.

### (5) Method of Payment

"Independent contractors are typically … paid a fixed sum on a by-the-job basis." <u>Gateway Taxi</u>, 400 S.W.3d at 486 (quoting <u>Midkiff</u>, 222 S.W.3d at 270 ). Plaintiffs were paid weekly based on certain non-negotiable factors, including stops made, packages handled, and distance traveled, after deductions for the Business Support Package, insurance and other items paid by FedEx. (OA, ¶ 4.1, 4.2; Plaintiffs' Indiv. SOF, ¶¶ E.1-7, F.1-3; Plaintiffs' Omnibus Exs. 5, 8, 19-20, and 42) Plaintiffs argue that FedEx's pay formula is a "piecework system" and not "payment by the job." (Mem. in Supp., pp. 31-32) FedEx responds that Plaintiffs are paid regardless of whether they perform the work or hire others to do so, which is not a common method of paying employees. (Consol. Opp., pp. 28-29)

Although their settlements were based in part on deliveries made, Plaintiffs were paid on a regular basis. The fact they were paid this way is consistent with an employee relationship, particularly where other indicia of employment are present. <u>See</u>, <u>Narayan</u>, 616 F.3d at 904. The fact that compensation rates were not negotiated (Plaintiffs' Indiv. SOF, ¶ E.2) also weighs in favor of

employee status. See, In re Fed Ex, 869 F.Supp.2d at 896 (citing Lewis v. ASAP Land Express, Inc., 554 F.Supp.2d 1215, 1225 (D.Kan. 2008)).

### (6) The degree to which FedEx furnished equipment

That a worker supplies his own tools is some evidence that he is not an employee. In re FedEx, 869 F.Supp.2d at 985 (citing Restatement (Second) of Agency, § 220 cmt. k (1958); see also Gateway Taxi, 400 S.W.3d at 486. Although Plaintiffs provide their own trucks and equipment, FedEx is intricately involved in the purchasing process, providing funds and recommending vendors. See, Estrada, 154 Cal.App. 4th at 9. As discussed above, FedEx requires Plaintiffs to have FedEx uniforms, scanners, printers, and communications-related equipment, and provides them an option of purchasing or renting through its Business Support Package. (OA, ¶ 7) Plaintiffs argue that all of this equipment was used during their service to FedEx, which was integral to FedEx's business. Where a worker uses "equipment in a continuous service integral to the business, a factual inference of employment arises." Miller, 714 S.W.2d at 657. (Mem. in Support, pp. 31-34) In addition, the undisputed facts demonstrate that FedEx provides the entire system of receiving, sorting, and loading packages. It supplies contractors with software and a computer network for tracking packages and provides terminals and sorting equipment for packages, sales and marketing services, and customer service personnel. (Plaintiffs' Omnibus SOF, ¶¶ 51-57; Plaintiffs' Indiv. SOF, ¶¶ I.1-13). This factor weighs in favor of employee status.

### (7) The extent to which the work is the regular business of FedEx

There is no dispute that the work of FedEx package delivery drivers is the essence of the business of a package delivery company such as FedEx. This factor clearly weighs in favor of employee status. Burgess, 923 S.W.2d at 454 (finding employee status where defendant would have no business purpose if the work of the plaintiff did not occur).

### (8) The employment contract

The OA states the parties' intent to create an independent contractor agreement. ("Both FedEx . . . and Contractor intend that Contractor will provide these services strictly as an indpendnet contractor , and not as an employee of FedEx for any purpose. (OA, Background Statement) In several provisions, the OA says FedEx directs the results, but not the manner and means, of the Plaintiffs' work. (OA, ¶ 1.15) More specifically, the OA provides that FedEx cannot "prescribe hours of work, whether or when the Contractor is to take breaks, what route the Contractor is to follow, or other details of performance." (Id.)

The contractual designation of the work status of a person is not conclusive for purposes of determining whether he is an employee or an independent contractor, when there is evidence to overcome such designation. Nunn, 151 S.W.3d at 401. See also, Williams, 2009 WL 2592312, at * 3-4 (the mere characterization in a contract of a party as an independent contractor is not controlling, especially when other contractual provisions evidence control); Burgess, 923 S.W.2d at 454 (holding that the plaintiff was an employee of the defendant and "declin[ing] to permit the reality of that status to be obscured by illusory formalities" in the employment contract). Simply characterizing a party as an independent contractor does not make it so; rather, a court must make a factual determination of independent contractor status. Sakabu v. Regency Const. Co., 2012 WL 4497650, *3 (Mo.Ct. App. Oct. 2, 2012) (citing Empson v. Mo. Highway and Transp. Comm'n, 649 S.W.2d 517, 521 (Mo. App. 1983)). As discussed above, the actual control exercised here by FedEx over Plaintiffs establishes a different relationship.

**Discussion**

Huggins v. FedEx, 592 F.3d 853, is the only Missouri case to address the employment status of FedEx drivers.[6] In Huggins, the plaintiff, who was riding with Esteban Gutierrez, a FedEx line

---

[6] To date, FedEx drivers in California, Illinois, Massachusetts, Kentucky, Nevada and New Hampshire have been classified as employees under that state's law. See Estrada, 154

haul truck driver, sought to recover against FedEx for injuries he sustained in a car accident under respondeat superior liability. FedEx moved for summary judgment, arguing it did not retain a right under the "Linehaul Contractor Operating Agreement "to control the "means and methods" of Gutierrez's work. 592 F.3d at 858. The district court granted summary judgment to FedEx, based on provisions of the operating agreement which stated that the parties "intend" that the driver "will provide [its] services strictly as an independent contractor, and not as an employee of [FedEx] for any purpose," and will "direct the operation of the Equipment and ... determine the methods, manner and means of performing the obligations specified in the Agreement." Id.

The Eighth Circuit reversed after examining the agreement and determining that FedEx had retained the right to control at least some of the "means and methods" of the work. Id. at 859. In particular, the agreement provided that the drivers performed work that was "part of the regular business" of FedEx. Drivers were required to look and act like FedEx employees while they performed FedEx services. Drivers were required to wear a FedEx-approved uniform and mark their vehicles with FedEx insignia. In a section addressing customer service, the agreement states that FedEx will "familiarize" drivers "with various quality service and safety procedures developed by [FedEx]," supporting an inference that the drivers were required to follow FedEx's procedures. FedEx also reserved the right to monitor drivers' safety practices; FedEx terminal personnel, "at their option," were permitted to "take a ... safety ride with contractor [or presumably the contractor's driver] to verify" compliance with standards in the agreement. Furthermore, drivers had to submit daily fuel receipts and daily shipping documents to FedEx. They also organized and returned undeliverable packages to FedEx, and drivers agreed to provide FedEx with "advance notice of

Cal.App.4th 1; In re FedEx Ground Package System, Inc. Employment Practices Litigation, 2010 WL 2243246 (N.D. Ind. May 28, 2010); Schwann v. FedEx Ground Package System, Inc., 2013 WL 3353776 (D. Mass. July 3, 2013); In re FedEx Ground, 758 F.Supp.2d 638 (N.D. Ind. 2010).

routes to be taken for each linehaul movement" and "a state by state mileage report" for interstate package and delivery movement. The agreement also lists certain bases for "driver disqualification," including failure to pass or submit to a drug or alcohol test that FedEx may administer "at such time and place and in such manner as determined by [FedEx] or its designees," as well as failing to obtain a federally-required physical certification issued by a FedEx-approved medical examiner. If an alleged act or omission would constitute a criminal offense, FedEx, "in its sole discretion," "may make a preliminary determination of the probability that [a driver] is guilty of [an] offense whether charged or not." Id. at 859-60.

The Court also focused on evidence offered by Huggins including a "record of Strength Test," a "Fair Credit Reporting Act Disclosure Statement," and a drug testing form, all of which supported an inference that FedEx participated in deciding whether Gutierrez would be hired. Id. at 861. While acknowledging there was record evidence tending to show that Gutierrez was an independent contractor, the Court in Huggins went on to state that "we believe that the evidence—including the terms of the written agreement, Mr. Huggins's declaration, and the documents showing that FedEx tested Mr. Gutierrez and checked into his background before he was hired—would support a reasonable inference and thus a jury finding that FedEx had a right to control his performance and was his employer for respondeat superior purposes. Id.

Based on an identical OA, the California Court of Appeals in Estrada, 154 Cal.App.4th 1, held that FedEx drivers who serviced a single work area were employees rather than independent contractors under California law. The evidence showed that the drivers' ability to use their equipment for independent purposes was "more imagined than real," id. at 333 n. 5; that "drivers and their trucks are subject to inspection every day ... and if either fails inspection, the driver may be barred from service," id. at 333; that "FedEx discharges drivers at will," id. at 336; and that FedEx exercises "control over every exquisite detail of the drivers' performance, including the color

routes to be taken for each linehaul movement" and "a state by state mileage report" for interstate package and delivery movement. The agreement also lists certain bases for "driver disqualification," including failure to pass or submit to a drug or alcohol test that FedEx may administer "at such time and place and in such manner as determined by [FedEx] or its designees," as well as failing to obtain a federally-required physical certification issued by a FedEx-approved medical examiner. If an alleged act or omission would constitute a criminal offense, FedEx, "in its sole discretion," "may make a preliminary determination of the probability that [a driver] is guilty of [an] offense whether charged or not." Id. at 859-60.

The Court also focused on evidence offered by Huggins including a "record of Strength Test," a "Fair Credit Reporting Act Disclosure Statement," and a drug testing form, all of which supported an inference that FedEx participated in deciding whether Gutierrez would be hired. Id. at 861. While acknowledging there was record evidence tending to show that Gutierrez was an independent contractor, the Court in Huggins went on to state that "we believe that the evidence—including the terms of the written agreement, Mr. Huggins's declaration, and the documents showing that FedEx tested Mr. Gutierrez and checked into his background before he was hired—would support a reasonable inference and thus a jury finding that FedEx had a right to control his performance and was his employer for respondeat superior purposes. Id.

Based on an identical OA, the California Court of Appeals in Estrada, 154 Cal.App.4th 1, held that FedEx drivers who serviced a single work area were employees rather than independent contractors under California law. The evidence showed that the drivers' ability to use their equipment for independent purposes was "more imagined than real," id. at 333 n. 5; that "drivers and their trucks are subject to inspection every day ... and if either fails inspection, the driver may be barred from service," id. at 333; that "FedEx discharges drivers at will," id. at 336; and that FedEx exercises "control over every exquisite detail of the drivers' performance, including the color

of their socks and the style of their hair." Id. The court found the drivers' right to control their own routes and schedules was illusory because they were "constrained by customer pick up and delivery windows contracted by the [FedEx] sales force" and by FedEx's paperwork requirements that required the drivers' presence at the terminal. Id. at 333-334. In sum, the court found the Operating Agreement to be "a brilliantly drafted contract creating the constraints of an employment relationship with [the drivers] in the guise of an independent contractor model." Id. at 334. See also Air Couriers Int'l v. Employment Dev. Dep't., 150 Cal.App.4th 923 (2007) (affirming finding of employee status for employment tax purposes where package delivery company retained all necessary control over the overall delivery operation, the work was simple, the workers weren't engaged in a separate profession or operating an independent business, and the delivery work was an integral aspect of the courier's business.)

While other courts have reached different conclusions, these cases are not dispositive, particularly in light of Huggins. In Johnson v. FedEx Home Delivery, 2011 WL 6153425 (E.D.N.Y. Dec. 12, 2011), for example, the Eastern District of New York held on summary judgment that the plaintiff delivery drivers were independent contractors under New York law. Because the plaintiffs did not file any opposition to FedEx's motion for partial summary judgment, the court concluded there was insufficient evidence on the record to create a genuine dispute on the issue whether the plaintiffs were employees or independent contractors, but clarified that its holding did not mean that such evidence did not exist. Id. at *46.

In FedEx Home Delivery v. NLRB, 563 F.3d 492 (D.C.Cir.2009), the District of Columbia Circuit held that FedEx single route drivers were independent contractors under the National Labor Relations Act. Unlike the "right to control" test for determining employment status in Missouri, in this case the court focused on the worker's right to engage in entrepreneurial activity, and specifically the drivers' "ability to operate multiple routes, hire additional drivers (including drivers

who substitute for the contractor) and helpers, and to sell routes without permission, as well as the parties' intent as expressed in the contract." Id. at 504. See also Anfinson v. FedEx Ground Package System, Inc., 244 P.3d 32 (Wash.App. Div. 1 Dec. 20, 2010), which held that the test for determining whether FedEx delivery drivers are independent contractors or employees is not whether FedEx had the "right to control" the workers, but rather, the "economic reality" of the working relationship.

**Conclusion**

After carefully considering the facts of record in the light most favorable to FedEx, the Court concludes that FedEx had the right to control and did control the means and manner of Plaintiffs' work to such an extent that they were employees of FedEx and not independent contractors. Plaintiffs were required to foster the professional image and reputation of FedEx by wearing the approved uniform and complying with personal appearance standards. FedEx required Plaintiffs' vehicles to meet certain specifications, to be painted "FedEx White," and to be marked with the FedEx logo and insignia. While governmental regulations may "furnish reasons for at least part of the control exercised" over driver and vehicle appearance and vehicle suitability standards, FedEx's requirements have been found to go beyond federal regulations. See In re FedEx, 869 F.Supp.2d at 980. Thus, FedEx's right to control Plaintiffs' personal appearance, as well as the appearance and suitability of their vehicles, weighs in favor of employee status. Id. See also Burgess, 923 S.W.2d at 453.

FedEx controlled Plaintiffs' PSAs. Plaintiffs actually received their route assignments from FedEx, rather than finding their own work. Such "daily assignments" demonstrate control that is indicative of employee status. See, Burgess, 923 S.W.2d at 453 ("Independent contractors generally find their own work rather than pick up daily assignments."). In addition, FedEx controlled Plaintiffs' daily workloads by flexing and reconfiguring their PSAs as it saw fit.

FedEx controlled the services Plaintiffs must provide for its customers, prices charged for those services, and customer service standards that drivers must meet. Fed Ex also retained the right to determine some time parameters for providing service to its customers. Drivers must work certain days of the week, deliver all packages assigned to them that day based on a nine to eleven hour work day and, on occasion, meet pick-up and delivery windows. While Plaintiffs may exercise discretion in selecting how to travel their assigned route, they were required to make daily pickups and deliveries on specific days and times due to FedEx's agreements with its customers. All of this weighs in favor of employee status.

FedEx monitored and disciplined Plaintiffs to control the work process. Supervisors or managers conducted "customer service rides" with drivers up to four times annually "to verify that the Contractor is meeting the standards of customer service provided in the Agreement,"and reviewed expectations through business discussions. Authority and promulgation of standards for supervision and performance review shows control and is indicative of employee status. Williams, 2009 WL 2592312, at *3-4.

In addition to the "extent of control" and "actual control" factors of the eight factor test, the remaining six factors also weigh in favor of employee status. Many of the Plaintiffs had long-term relationships with FedEx, demonstrating that they were not hired by the job. Plaintiffs could effectively be terminated at will given that the OA provides for nonrenewal without cause. Plaintiffs were not paid by the job like independent contractors. Instead, they were  paid weekly, based on fixed and variable factors, all of which were non-negotiable. Although Plaintiffs provided their own vehicles and some equipment, FedEx was intricately involved in the purchasing process, providing options for leasing and/or financing. Moreover, FedEx provided the entire system of receiving, sorting and loading packages, software and computer network for tracking packages, terminals and sorting equipment for packages, sales and marketing services, and customer service personnel.

Finally, Plaintiffs' work is the essence of the business of a package delivery company such as FedEx.

FedEx is correct that a worker's ownership interest in his route is inconsistent with any traditional understanding of employment. <u>Skidmore</u>, 110 S.W.2d at 730. Here, however, none of the Plaintiffs actually "owned" their routes. Customer accounts were based on contracts between FedEx and the customers. FedEx set up any new business brought to Plaintiffs' routes. Drivers could not increase their compensation through soliciting new customers. (Plaintiffs' Indiv. SOF, ¶ C.k,l) Plaintiffs could only sell their routes to purchasers approved by FedEx. (<u>Id</u>., ¶ G.5). Further, Plaintiffs could only buy routes once they were approved by FedEx. In addition, FedEx could unilaterally change the size and configuration of the Plaintiffs' routes at any time without Plaintiffs' approval. (Plaintiffs' Omnibus SOF ¶ 14; Plaintiffs' Indiv. SOF ¶ G.2) All of the Plaintiffs either sold their routes to a purchaser approved by FedEx, were forced to sell their routes to a purchaser approved by FedEx, or were either terminated or non-renewed by FedEx, in which case, FedEx took their routes. *(Gray* and *Wells* Plaintiffs' Opp. Affs., ¶12; Plaintiffs' Indiv. SOF ¶¶ G.5, H.3, H.4)

For all these reasons, Plaintiffs' motion for partial summary judgment on the issue of employment status will be granted.

### C. FedEx Ground Package System, Inc.'s Consolidated Motion for Summary Judgment

FedEx moves for summary judgment on all Counts of Plaintiffs' Sixth Amended Complaint in *Gray*: Fraudulent Misrepresentation (Count I) and Claims for Wages Under Sections 290.527 and 290.505, R.S.Mo. (Count II), and all Counts of Plaintiffs' Amended Complaint in *Wells*: Illegal Deductions from Wages (Count I), Fraudulent Misrepresentation (Count II), Rescission (Count III), and Declaratory Judgment (Count IV).

#### (1) Fraudulent Misrepresentation

All Plaintiffs allege that FedEx committed fraud by misrepresenting to them in the OA that they would be independent contractors when they were in fact treated as employees. The *Gray* Plaintiffs also allege that similar oral misrepresentations were made to them by members of FedEx terminal management. (*Gray* Compl. ¶ 47). Plaintiffs claim that FedEx knew or should have known "that the 'independent contractor' classification in the OA was improper and that Plaintiffs were 'employees' … [and] through the Operating Agreement … intentionally misled the Plaintiffs as to their employment status." (*Gray* Compl. ¶ 46; *Wells* Compl. ¶ 48). Plaintiffs allege that as a direct and proximate result of FedEx's misrepresentations, they were harmed by having to "assume responsibility for all employment-related expenses" and by otherwise being denied other alleged "benefits of employment." They also allege they were harmed by being deprived of "the freedom to operate their business as they see fit, and to run the risks and rewards of owning a business." (*Gray* Compl. ¶¶ 31, 49, 52, 53; *Wells* Compl. ¶¶ 32, 51).

FedEx argues Plaintiffs' fraud claims fail as a matter of law because they cannot prove proximately caused injury and because the alleged misrepresentations are not actionable statements of fact. In addition, FedEx argues that 21 of the Plaintiffs' claims are untimely. (*Gray* Doc. No. 214; *Wells* Doc. No. 123 ("Consol. Mem. in Supp."), p.11)

**(a) Proximately caused injury/measure of damages**

While the Court has ruled herein that Plaintiffs were FedEx employees as a matter of law, Plaintiffs must still show that FedEx's representation that they were independent contractors was the direct and proximate cause of their loss. FedEx argues Plaintiffs' fraud claims fail because the harm they claim to have suffered was not caused by the misrepresentations they allege. ( Consol. Mem. in Supp., pp. 13-19) Here Plaintiffs are trying to recover the value of what they conferred to FedEx, measured by what they would have been paid if they were employees. (Id., pp. 14-16) According to FedEx, if Plaintiffs had been treated as independent contractors, they would have

borne the same expenses and would not have earned overtime pay or other employment benefits. In sum, when the same loss would have occurred in the absence of the misrepresentation, the causation element of a fraud claim is lacking and a claim for fraud fails. See First Franklin Fin. Corp. v. Residential Title Servs, Inc., 2009 WL 1508784 (E.D. Mo. May 28, 2009); First Bank of Marietta v. Hogge, 161 F.3d 506 (8th Cir. 1998); Mackey & Associates, Inc. v. Russell & Axon International Engineers-Architects, Ltd., 819 S.W.2d 49 (Mo.Ct.App. 1991).

In response, Plaintiffs rely on the Restatement (Second) of Torts, § 548A, which states that "[a] fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance on it if, and only if, the loss might reasonably be expected to result from the reliance." (*Gray* Doc. No. 293; *Wells* Doc. No. 173 ("Rev. Mem. in Opp."), p. 11)

The Court previously addressed this argument in its order denying FedEx's motion to dismiss the Sixth Amended Complaint in *Gray*. (Doc. No. 152, p. 8) Whether expressed in the form of lost pay, or increased and unnecessary expenses, Plaintiffs' alleged damages clearly flow from FedEx's misrepresentations.

In addition, FedEx challenges Plaintiffs' theory of damages as not based on the benefit of the bargain or lost profits analysis. See Heberer v. Shell Oil Co., 744 S.W.2d 441, 443 (Mo. 1988) ("The courts of this state are committed to the benefit of the bargain rule as a method of arriving at damages in a case of fraud."). FedEx contends that based on the undisputed evidence, Plaintiffs cannot establish lost profits sufficient to support recovery of damages for their loss. (Consol. Mem. in Supp., pp. 16-19)

Plaintiffs respond that they are not proceeding on a benefit of the bargain theory. Instead, they are seeking general damages, the difference between what they received and the true value of what they gave, as well as other losses suffered from their reliance on FedEx's misrepresentations, including benefits. (Rev. Mem. in Opp., pp. 12-13) In Emerick v. Mutual Ben. Life Ins. Co., 756

S.W.2d 513 (Mo. 1988), the Missouri Supreme Court stated that "[t]he damages recoverable represent the pecuniary loss to the recipient of the misrepresentation of which the false statement is a 'legal cause,' i.e., the loss reasonably expected to stem from reliance upon the representation. Id. at 521 (citing Restatement (Second) of Torts §§ 548A, 549). The Restatement (Second) of Torts, §549 sets forth the measure of damages for fraudulent misrepresentation as follows:

> (1) The recipient of a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker the pecuniary loss to him of which the misrepresentation is the legal cause, including:
>
> a. the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
>
> b. pecuniary loss suffered otherwise as the consequence of the recipient's reliance upon the misrepresentation.

The most common method of determining damages is to assess the difference between what the plaintiff received and the value given for what he received. These are usually called "general damages." See Restatement (Second) of Torts, Comment (a) on subsec. (1). (Rev. Mem. in Opp., pp. 12-13)

As further support for their position, Plaintiffs noted at oral argument that Missouri law expressly permits the use of the generalized damages instruction, MAI 4.01, as opposed to MAI 4.03, the benefit of the bargain instruction, when the parties have clearly presented the nature of the dispute as to damages. See Central Microfilm Service Corp. v. Basic/Four Corp., 688 F.2d 1206, 1220 (8th Cir. 1982); Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1015-16 (8th Cir. 2008). (Transcript of Oral Argument ("Tr."), Gray Doc. No. 329; Wells Doc. No. 208, 45:10-46:23)

Although the primary measure of damages for fraud in Missouri is the benefit of the bargain, the use of other measures of damages are permitted when the benefit of the bargain rule does not accurately measure the loss sustained. Glass Design Imports, Inc. v. Import Specialties, 867 F.2d

1139, 1143 (8th Cir. 1989) (citing <u>Central Microfilm</u>, 688 F.2d at 1220); <u>Kerr v. First Commodity</u> <u>Corp.</u>, 735 F.2d 281, 285 (8th Cir. 1984)).The "bargain theory" measure is the difference between the actual value and the represented value of the subject of the transaction. <u>Central Microfilm</u>, 688 F.2d at 1220 (citing <u>Smith v. Tracy</u>, 372 S.W.2d 925, 938 (Mo. 1963)). In this case, FedEx did not make representations as to specific values; rather, it induced Plaintiffs to work as employees without the benefits inherent in an employer/employee relationship. The resultant harm is best measured by what Plaintiffs should have been paid as opposed to what they were actually paid. <u>Id</u>. at 1220-21. Accordingly, Plaintiffs have presented a submissible case on the issue of damages related to their fraud claims sufficient to defeat summary judgment.

### (b) Actionable statements of fact

Next, FedEx argues that because the legal standard for determining employment status requires consideration of numerous factors, the alleged misrepresentations regarding Plaintiffs' status as independent contractors are not actionable statements of fact. <u>Constance v. B.B.C. Dev.</u> <u>Co.</u>, 25 S.W.3d 571, 587 (Mo.Ct.App. 2000) ("The generally recognized distinction between statements of fact and opinion is that whatever is susceptible of exact knowledge is a matter of fact, while that not susceptible is generally regarded as an expression of opinion.") (Consol. Memo. in Supp., pp. 19-22) The Court has ruled, based on the undisputed facts of record, that Plaintiffs were employees of FedEx and not independent contractors. Thus, the 'independent contractor' classification in the OA, as well as the statements made by FedEx terminal management that Plaintiffs would be independent contractors, able to manage their own businesses and be their own bosses, are misrepresentations of existing fact and properly the subject of their fraud claims.

### (c) Statute of limitations

Fed Ex further argues that the fraud claims of 11 of the 14 Wells Plaintiffs[7] and 10 of the 24 Gray Plaintiffs[8] are governed (and barred) by the five year statute of limitations in Mo.Ann.Stat. §516.120(5), plus an additional one year and 27 days of tolling during the period when the motion for class certification was pending in the MDL litigation in *Gray*. This assumes Plaintiffs may not have known, or been able to discover, the basis for their claim until they had been contractors for six months. (Consol. Mem. in Supp., pp. 22-23) FedEx contends that Plaintiffs were required to bring their claims within five years of when they discovered, or should have discovered, the falsity of the representation that they would be independent contractors, i.e., that they were in fact being treated as employees. Burr v. Nat'l Life & Accident ins. Co., 667 S.W.2d 5, 7 (Mo.Ct.App. 1984) ("A cause of action for fraud accrues [and the statue of limitations starts running] at the time the defrauded party discovered or in the exercise of due diligence, should have discovered the fraud.") FedEx relies on Plaintiffs' own allegations of control over them by FedEx, many based on terms in the OA, including the appearance, uniform and branding "requirements," all of which FedEx contends were known or discoverable by Plaintiffs at the outset of their relationship with FedEx. (Consol. Mem. in Supp., pp. 22-23)

Plaintiffs respond that there is no statute of limitations issue for those who filed within five (5) years of their start date, namely *Gray* Plaintiffs Baker, Blackmon, Gray, Hill, Holmes, Huskic, Tenison, Tichenor, and Tucker, and *Wells* Plaintiffs Cook and Miller. (Rev. Memo. in Opp., p. 20)

In further response, Plaintiffs maintain that the accrual dates of the fraud claims of *Gray* Plaintiffs Austin, Brown, Jost, Pour, Sanders, Sheffer, and Waweru, and the remaining *Wells* Plaintiffs can be determined with accuracy and are not barred by the five-year statute of limitations.

---

[7]Adams, Borders, Bowden, Dees, Fickbohm, Jacobson, Moore, Smith, Svitak, Taube, Wells

[8]Arbutti, Austin, Brown, Hendricks, Jost, McClain, Pour, Sanders, Sheffer, Waweru

Austin started his employment with FedEx on September 18, 2000 and became a plaintiff on September 30, 2008. He testified on deposition that he realized he was not an independent contractor when FedEx would not permit him to add an additional route in either 2003 or 2004. (Austin Depo., 185:5-25; 186:1-25; 187:1-21) Brown was employed by RPS in 2000 when FedEx purchased the company. Thereafter, Brown was employed by FedEx as a ground pick-up and delivery driver from 2000-2003, and a home delivery driver from April 17, 2003 through November 8, 2006. He became a plaintiff on September 30, 2008.[9] Brown testified he first realized he was not an independent contractor when FedEx took control of his business in December 2005. (Brown Depo., 356:1-25; 357:1-5) Jost was employed by RPS in 2000 when FedEx purchased the company and became a plaintiff on September 30, 2008. He testified that he knew he was not self-employed when FedEx unilaterally terminated his OA in 2003. (Jost Depo., 104;22-25; 105:1-11; 106:1-17) Pour was a driver for RPS when FedEx purchased the company in 2000 and became a plaintiff on September 30, 2008. He testified that he began to believe that FedEx's representations that he would be an independent contractor were not true "as the years progressed" during his employment with FedEx and that FedEx's control over him would "escalate" every year. (Pour Depo., 85:5-25; 86:1-10) Pour further testified that he knew he was not an independent contractor at the end of 2004 when he was injured and FedEx told him he would have to figure out a way to run his route or lose it. (Pour Depo., 86:11-25; 87:1-15; 88:1-11)  Sanders started with FedEx on November 27, 2001 and became a plaintiff on September 30, 2008. He testified there was a point right before he left in November 2003 when he began to understand that he was not in control of his route and business. Sheffer started with FedEx in 2000 and became a Plaintiff on September 20, 2008. He testified he knew the representations made by FedEx were false when he was forced to pick-up packages at Kinko's or

---

[9]Brown is only seeking damages from and after the date he became a driver for the home division.

face cancellation of his OA in 2005 or 2006. (Sheffer Depo., 107:25; 108:1-23) He further testified he began to understand that Fed Ex's representations that he would own his own business were false "about halfway through his time at FedEx," in approximately 2005. (Sheffer Depo., 111:1-13) Waweru stated with FedEx on July 21, 2001 and became a plaintiff on September 30, 2008. He testified that he knew he was not an independent contractor toward the end of 2003. (Waweru Dep., 199:22-25; 200:1-11; 200:12-25; 201:1-25; 202:1-17; 202:18-25; 203:1-25; 204:1-18)

As for the remaining *Wells* Plaintiffs, Borders, Bowden, Dees, Fickbohm, Jacobson, Moore, Smith, Svitak, Taube and Wells, all of them stated they "slowly became aware" of FedEx's control over the course of their employment. Once they realized the extent of that control, they sold their routes. Specifically, Borders started with FedEx in October 2002 and ended on or about January 2006, when he sold his route. He became a plaintiff on November 3, 2010. (Borders Aff., ¶¶ 11-12; Borders Depo., 188:17-189:3) Bowden started with FedEx in October 2003 and ended on or about September 2006. He sold his route in 2006 and became a plaintiff on November 3, 2010. (Bowden Aff., ¶¶ 11-12) Dees started with FedEx in January 2000 and ended on or about July 2006. He sold his route in 2006 and became a plaintiff on November 3, 2010. (Dees Aff., ¶ 11-12) Fickbohm started with FedEx in February 2004 and ended on or about November 2009. He sold his route in 2009 and became a plaintiff on November 3, 2010. (Fickbohm Aff., ¶¶ 11-12) Jacobson started with FedEx in July 2001 and ended on or about January 2006. He sold his route in 2006 and became a plaintiff on November 3, 2011. (Jacobson Aff., ¶¶ 11-12) Moore started with FedEx in May 1999 and ended on or about June 2006. He sold his route in 2006 and became a plaintiff on November 3, 2011. (Moore Aff., ¶¶ 11-12) Smith started with FedEx in January 1998 and ended on or about April 2011. He sold his route in 2011 and became a plaintiff on May 10, 2011, relating back to November 3, 2010, the date of the original *Wells* complaint. (Smith Aff., ¶¶ 11-12) Svitak stated with FedEx in July 1998 and ended on or about February 2006. He sold his route in 2006 and became a plaintiff on May 20,

2011, which relates back to November 3, 2010. (Svitak Aff., ¶¶ 11-12) Taube started with FedEx in 2000 and ended on or about January 2010. He sold his route in 2010 and became a plaintiff on November 3, 2010. (Taube Aff., ¶ 11-12) Wells started with FedEx on May 1991 and is still working for FedEx. He became a plaintiff on November 3, 2010. (Wells Aff. ¶¶11-12)

Finally, Plaintiffs concede that for *Gray* Plaintiffs Arbutti, Hendricks, and McLain, it is unclear when their causes of action accrued. (Rev. Memo. in Opp., p. 21) Plaintiffs take the position that if there is any question as to whether their fraud clams were timely filed, then this is an issue of fact to be submitted to a jury, citing  Judy v. Arkansas Log Homes, 923 S.W.2d 409, 419 (Mo. Ct.App. 1996) and Martin v. Holloran, 2008 WL 878420, at *8 (E.D. Mo. Mar. 27, 2008) (While normally "the running of the statute [of limitations] is a question of law for the court to decide . . . when contradictory or different conclusions may be drawn from the evidence as to whether the statute of limitations has run, it is a question [of] fact for the jury to decide.") (internal citations and quotations omitted).

In reply, Fed Ex argues that Plaintiffs mistakenly argue that a subjective standard governs the date of accrual of their fraud claims, when it is settled that a cause of action for fraudulent misrepresentation accrues at the time the defrauded party discovers, or with the exercise of due diligence, should have discovered the fraud. Graf v. Michaels, 900 S.W.2d 659, 661 (Mo.Ct.App. 1995). (Doc. No. 302, p. 8)

In Missouri, the limitations period does not begin to run at the time of the wrongdoing, but when the damages from the wrong are incurred and are reasonably capable of being ascertained by the injured party. Joyce v. Armstrong Teasdale, LLP, 635 F.3d 364, 367 (8th Cir. 2011) (citing Mo.Rev.Stat. § 516.100 ("[F]or the purposes of [§ 516.120], the cause of action shall not be deemed to accrue when the wrong is done ... but when the damage resulting therefrom is sustained and is capable of ascertainment."). Missouri courts have interpreted this statute to mean the limitations

period commences when a "reasonably prudent person [is] on notice of a potentially actionable injury." Id. (quoting Powel v. Chaminade Coll. Preparatory, Inc., 197 S.W.3d 576, 582 (Mo.2006)). Because this standard is objective, "where relevant facts are uncontested, the statute of limitations issue can be decided by the Court as a matter of law. However, when contradictory or different conclusions may be drawn from the evidence as to whether the statute of limitations has run, it is a question of fact for the jury to decide." Powel, 197 S.W.3d at 585 (citing Lomax v. Sewell, 1 S.W.3d 548, 552-53 (Mo.Ct.App. 1999); Straub v. Tull, 128 S.W.3d 157, 159 (Mo.Ct.App. 2004)).

Although many of the Plaintiffs were aware of certain aspects of FedEx's control when they signed the OA, such as the required uniforms and FedEx's logo on their vehicles, it is their position that they did not realize the true extent of FedEx's control over their routes and businesses until later in their employment. (Plaintiffs' Opp. Affs., ¶¶ 10-11, attached to Plaintiffs' Supp. Resp., *Gray* No. 294; *Wells* Doc. No 174). FedEx told Plaintiffs they would be independent contractors, and Plaintiffs believed they would be independent contractors when signing the OAs, and signed the OAs based upon that belief. (Plaintiffs' Resp. SOF ¶ 5) For purposes of the Missouri statute of limitations, the issue is when the amount of FedEx's control over their activities reached a level that Plaintiffs realized that they were employees and not independent contractors. According to Plaintiffs, this moment in time is different for each of them.

The original six *Gray* Plaintiffs (Gray, Hill, Holmes, Patton, Tichenor and Tucker) filed their complaint on March 6, 2006; the remaining *Gray* Plaintiffs joined the lawsuit on September 30, 2008 (Arbutti, Austin, Blackmon, Brown, Candela, Huskic, Jost, Mitchell, Pour, Sanders, Sheffer, Tenison and Waweru), April 26, 2010 (Baker, Hansen, McClain, O'Keefe), and October 30, 2011 (Hendricks). The *Wells* Plaintiffs filed their complaint on November 3, 2010 (Adams, Borders, Bowden, Dees, Fickbohm, Jacobson, Miller, Moore, Redel, Taube and Wells) and May 10, 2011 (Cooke, Smith, Svitak). To prevail on its statute of limitations defense, FedEx must prove that

Plaintiffs' claims accrued more than five years from the date each joined the lawsuit plus another year and twenty-seven days of tolling. After reviewing the summaries of the Plaintiffs' testimony relating to the statute of limitations (*Gray* Doc. No. 227-28; *Wells* Doc. No. 156-18), the Court finds that different conclusions may be drawn from the evidence as to whether the statute of limitations has run, making summary judgment inappropriate.

Accordingly, FedEx's motion for summary judgment on Plaintiffs' claims for fraudulent misrepresentation will be denied.

### (2) Claims for wages/overtime[10]

Plaintiffs have asserted claims under the Missouri Minimum Wage Law ("MMWL"), Mo. Stat. Ann. § 290.505, which provides that "no employer shall employ any of his employees for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." FedEx argues it is entitled to summary judgment on the overtime claims of 24 of the 25 Plaintiffs asserting such claims.

First, FedEx argues that the ten Plaintiffs[11] with overtime claims who stopped working for FedEx before January 1, 2007 are exempt from the MMWL. Before January 1, 2007, the MMWL excluded from its definition of "employee" any "individuals employed by an employer" subject to

---

[10]In *Gray*, this Court granted Plaintiffs leave to amend their complaint to assert a claim for overtime in place of their claim for "illegal deductions from wages."(Memorandum and Order, *Gray* Doc. No. 136; Sixth Amended Complaint, *Gray* Doc. No. 142) This Court has found that the *Gray* Plaintiffs' claims for wages under §§ 290.527 and 290.505 and the claims for illegal deductions from wages asserted in *Wells* are both essentially claims for wage deficiency on the theory that FedEx Ground did not pay all "wages" owed to Plaintiffs. (Memorandum and Order on FedEx's Motion to Dismiss Sixth Amended Complaint, *Gray* Doc. No. 157)

[11]*Gray* Plaintiffs Brown, Candela, Hill, Holmes, Patton, Sheffer, Tenison, Tichenor and Tucker and *Wells* Plaintiff Moore

the Fair Labor Standards Act ("FLSA"). <u>See</u>, <u>e.g.</u>, Mo. Ann. Stat. § 290.500, Historical and Statutory Notes, 2006 Amendment (West 2012) (providing that "individuals employed by an employer covered by 29 U.S.C. § 203" were not subject to the state statute); <u>Doyel v. McDonald's Corp.</u>, 2009 WL 350627, at *2 (E.D. Mo. Feb. 10, 2009) (holding that the statute "plainly exempted … all employees who were covered by the FLSA before January 1, 2007"). FedEx contends it is an "employer" within the meaning of the FLSA, <u>see</u> 29 U.S.C. § 203,[12] and as such, the overtime claims of these ten Plaintiffs fail. <u>Doyel</u>, 2009 WL 350627, at *2 (dismissing claims for violations of the Missouri minimum wage law prior to January 1, 2007, "because defendant was covered by the FLSA before January 1, 2007.").

Plaintiffs did not address FedEx's argument in their opposition. At oral argument, however, they relied on <u>Davenport v. Charter Communications, LLC</u>, 2012 WL 5050580 (E.D. Mo. Oct. 18, 2012), to support their position that all of their wage claims survive. (Tr., 53:11-54:7) Plaintiffs' reliance is misplaced. In <u>Davenport</u>, a collective action to recover unpaid wages and overtime under the FLSA, the plaintiffs alleged identical violations of the MMWL as well as three common law claims for breach of contract, quantum meruit and unjust enrichment. Defendant moved to dismiss the plaintiffs' common law claims on the grounds of preemption by the FLSA. Following the decisions of other district courts in the Eighth Circuit, including the Eastern District, the court found no preemption under the FLSA of the plaintiff's state common law claims. <u>Davenport</u>, 2012 WL 5050580, at *3 (and cases cited therein). The court did not, however, address the plaintiff's MMWL claims and no argument was made that in that case that the claims predated the effective date of the statute.

---

[12]"Employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . ." 29 U.S.C. § 203(d).

In Doyel, the court instructed that "[b]ased on the entire text and purpose of the MMWL, the exemption meant to protect individuals by the MMWL if they were not protected by the FLSA . . . [B]ecause defendant was covered by the FLSA before January 1, 2007, plaintiffs . . . are barred from recovering under the MMWL for violations occurring before January 1, 2007." 2009 WL 350627 at * 2. The Court has ruled that Plaintiffs were employees of FedEx as a matter of law. Thus, FedEx is an "employer" as defined under the FLSA. Because *Gray* Plaintiffs Brown, Candela, Hill, Holmes, Patton, Sheffer, Tenison, Tichenor and Tucker and *Wells* Plaintiff Moore were not working for FedEx after January 1, 2007, they are barred from recovering under the MMWL.

Next, FedEx contends that the claims of five other overtime Plaintiffs[13] fail because they are subject to an overtime exemption that applies to employees of motor carriers. See Mo.Ann.Stat. § 290.505(3), which provides that "the overtime requirements of [§ 290.505(1)] shall not apply to employees who are exempt from federal minimum wage or overtime requirements including, but not limited to, the exemptions . . . specified in [the Fair Labor Standards Act]." (Mem. In Supp. Of Consol. Mo., p.34) In particular, the FLSA exempts employees covered by the Motor Carrier Act ("MCA") from overtime eligibility. See 29 U.S.C. § 213(b)(1). An employee is subject to the MCA exemption if he is "(1) employed with a motor carrier subject to the power of the Secretary of Transportation; (2) engaged in activities directly affecting the operational safety of motor vehicles; and (3) engaged in interstate commerce." Jaramillo v. Garda, Inc., 2012 WL 4955932, at *2 (N.D. Ill. Oct. 17, 2012). (Mem. in Supp. of Consol. Mo., p. 34)

Before August 10, 2005, a "motor carrier" was defined as "a person providing motor vehicle transportation for compensation," 49 U.S.C. § 13102(12) (2004), and the MCA exemption "applied to all drivers operating in interstate commerce, regardless of the weight of the vehicle driven."

---

[13]*Gray* Plaintiffs Arbutti, Blackmon and O'Keefe and *Wells* Plaintiffs Cooke and Jacobson

Buckner v. United Parcel Service, Inc., 2012 WL 1596726, at *4 (E.D. N.C. May 7, 2012). On August 10, 2005, Congress changed the definition of a "motor carrier" to include only commercial motor vehicles. Id. Commercial vehicles were defined as vehicles having "a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds." Id. (citing 49 U.S.C. § 31132(1)(A)). As a result, employees of motor vehicles operating vehicles weighing less than 10,001 pounds no longer qualified for the MCA exemption. Id.; Jaramillo, 2012 WL 4955932, at *3 (citing 49 U.S.C. § 31132(1)); Brooks v. Halstead Communications, Ltd., 620 F.Supp.2d 193, 197-98 (D.Mass. 2009). Then on June 6, 2008, Congress enacted the SAFETEA–LU Technical Corrections Act of 2008 (the "TCA"), which restored the 2004 definition of a "motor carrier," but retained the weight limitation for vehicles. Jaramillo, 2012 WL 4955932, at *3. In sum, the TCA permits overtime claims under the FLSA by drivers of vehicles weighing 10,001 pounds or less. (Mem. in Supp. of Consol. Mo., p. 35) Drivers of vehicles weighing over 10,001 pounds remain exempt from the FLSA's overtime requirements. (Id.) FedEx argues that because these five Plaintiffs did not drive vehicles under 10,001 pounds after the June 6, 2008 enactment of the TCA, their claims are barred by the MCA exemption.

In response, Plaintiffs argue that FedEx is a "hybrid motor carrier," because it employs drivers with vehicles weighing both over and under 10,001 pounds. "When mixed activities occur, and employees are asked to operate both commercial and on-commercial vehicles during their course of employment, the employees' coverage under the FLSA is favored." (Rev. Mem. in Opp., p. 39) (citing Hernandez v. Brink's Inc., 2009 WL 113406, at *6 (S.D. Fla. Jan. 15, 2009).[14]

---

[14] Because the Court has ruled that Plaintiffs are employees of FedEx as opposed to independent contractors, Plaintiffs' argument that FedEx is not a motor carrier as defined by the Motor Carrier Act is moot. (Rev. Mem. In Opp., pp. 37-38)

Courts that have considered the issue of a "mixed fleet" of both commercial and non-commercial vehicles are divided on the proper approach, but the prevailing view appears to be that when mixed activities occur, the MCA favors coverage of the employee during the course of employment, so long as the time an employee spends operating commercial motor vehicles is more than de minimus. Avery v. Chariots For Hire, 748 F.Supp.2d 492, 500 (D.Md. 2010) (citing Hernandez v. Brink's, Inc., 2009 WL 113406, at *6 (S.D.Fla. Jan. 15, 2009) ("[W]hen mixed activities occur, the Motor Carrier Act favors coverage of the employee during the course of employment."); Dalton v. Sabo, Inc., 2010 WL 1325613, at *4 (D.Or. Apr. 1, 2010) (holding that motor carrier exemption applied to plaintiffs that performed maintenance on a fleet that consisted of vehicles weighing both more and less than 10,000 pounds); c.f., Tews v. Renzenberger, 592 F.Supp.2d 1331 (D.Kan.2009) (holding that the mere presence of a few commercial motor vehicles in a company's fleet does not render all of its driver's exempt from overtime pay). As the Seventh Circuit explained, "[d]ividing jurisdiction over the same drivers, with the result that their employer would be regulated under the [MCA] when they were driving the big trucks and under the [FLSA] when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes." Collins v. Heritage Wine Cellars, Ltd., 589 F.3d 895, 901 (7th Cir.2009).

Employers relying on an exemption to avoid the minimum wage and overtime requirements of the FLSA bear the burden of proof that an exemption applies. Fast v. Applebee's Intern., Inc., 638 F.3d 872, 882 (8th Cir. 2011) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974)). Exemptions are construed narrowly against the employer. Adams v. City of Manchester, 2012 WL 3242078, at *4 (E.D. Mo. 2012). Plaintiffs take the position that an individualized analysis as to each driver is required in order for FedEx to claim exemption from the FLSA under the MCA. (Tr., 56:11-12:57:14-22)

The undisputed evidence shows that *Gray* Plaintiffs Arbutti and Blackmon, and *Wells* Plaintiff Jacobson, stopped contracting with FedEx prior to June 6, 2008 (SOF, ¶¶ 44-46), when the MCA exemption applied to all employees of motor carriers. Accordingly, their claims are barred. As for the remaining Plaintiffs, FedEx asserts that *Gray* Plaintiff O'Keefe and *Wells* Plaintiff Cooke both drove vehicles weighing over 10,001 pounds after June 6, 2008. (Consol. Mem. in Supp., p. 36) O'Keefe testified  he did not know the GVWR of his vehicle, raising  a disputed issue of material fact. (Plaintiffs' Supp.Resp. SOF, ¶ 48) Cooke does not dispute that he operated a vehicle with a GVWR of over 10,000 pounds. (Id., ¶ 47) Therefore, his claim is barred.

FedEx further argues that the overtime claims of nine Plaintiffs[15] who operated as corporations during the relevant time period fail as a matter of law. Under the OA, contractors can form their own corporations or other businesses entities, and they bear all of the costs and risks associated with their businesses. (OA, ¶¶ 1.2,1.3, 3.1) The MMWL defines an "employee" as "any individual employed by an employer." Mo.Ann.Stat. § 290.500 (3). While the MMWL does not define "individual," FedEx contends that in analogous contexts, the term "individual" means a natural person, not a "corporation." (Memorandum In Support of Consol. Mo., Wells Dkt. No. 123, pp. 37-38) Plaintiffs respond that no Missouri case precludes an individual from making an overtime claim on this basis, and this Court's independent research has revealed none. FedEx's argument, while creative, is not controlling, and overlooks the common understanding that in terms of their legal status, corporations are treated as persons, entitled to sue and be sued, own property, and incur contractual obligations. The fact that some of the Plaintiffs use corporate status does not defeat their overtime claims, particularly because Plaintiffs signed the OAs as individuals, not as business entities. (Rev. Memo. in Opp., p. 41)

---

[15]*Gray* Plaintiffs Austin, Baker, Gray, Hendricks and Pour and *Wells* Plaintiffs Redel, Smith, Taube and Wells (SOF ¶¶ 96-104)

Finally, FedEx argues Plaintiffs Gray, Sheffer and Wells are judicially estopped from asserting their wages claims because they failed to disclose them in bankruptcy proceedings. (Mem. In Supp., The law is well-settled that a plaintiff who previously filed for bankruptcy "may be judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." Stallings v. Hussman Corp., 447 F.3d 1041, 1047 (8th Cir. 2006). The Eighth Circuit has explained that judicial estoppel applies when: (1) the debtor's later position is "clearly inconsistent with its earlier position"; (2) the bankruptcy court has "adopted the debtor's position"; and (3) the "debtor's non-disclosure of the claim [is not] inadvertent and . . . result[s] in the debtor gaining an unfair advantage." Id. at 1047-48. FedEx contends that all three factors are present here.

First, Plaintiffs' failure to include their claims against FedEx in their bankruptcy filings is "clearly inconsistent" with their prosecution of those claims in this case. All three either knew of their claims against FedEx before they filed for bankruptcy or during the pendency of their bankruptcy proceedings, yet none of them listed any claim against FedEx as an asset in their bankruptcy petition or supplemented their bankruptcy filings to disclose their claims against FedEx. Second, Plaintiffs' bankruptcy debts have been discharged. Third, Plaintiffs' failure to disclose their claims was not inadvertent, in that they were all aware of their claims against FedEx when they filed for bankruptcy. (Consol. Mem. in Supp., pp. 39-41)

Plaintiffs respond that judicial estoppel is not a mandatory doctrine, but rather an equitable one, invoked by a court in its discretion; it does not apply when a party's prior position was taken because of a good-faith mistake rather than as part of a scheme to mislead the court. See Loth v. Union Pacific RR Co., 354 S.W.3d 635 (Mo.Ct.App. 2011) (reversing summary judgment granted on the basis of judicial estoppel). Plaintiffs argue that estoppel is inappropriate in this context, without a thorough inquiry into the facts and circumstances of their failure to disclose their claims

in bankruptcy. Plaintiffs state they have either reopened their bankruptcy cases or are in the process of doing so. (Gray Opp. Aff., ¶¶ 17, 18; Sheffer Opp. Aff., ¶¶ 17, 18; Wells Opp. Aff., ¶¶ 18-20) FedEx has produced no evidence that Plaintiffs acted in bad faith. (Rev. Mem in Opp., pp. 41-44) Where the evidence is susceptible to more than one inference, summary judgment is not proper. Loth, 354 S.W.3d at 642. Because there is a question of fact regarding Plaintiffs' intent in failing to disclose their claims against FedEx in their bankruptcy actions, summary judgment based on judicial estoppel will be denied.

Accordingly, FedEx's motion for summary judgment on Plaintiffs' claims for wages/overtime will be granted as to *Gray* Plaintiffs Arbutti, Blackmon, Brown, Candela, Hill, Holmes, Patton, Sheffer, Tenison, Tichenor and Tucker, and *Wells* Plaintiff Jacobson, Cooke and Moore.

### (3) Rescission and Declaratory Judgment

Plaintiffs concede that only the rescission and declaratory judgment claims of two *Wells* Plaintiffs, Wells and Smith, remain. (Revised Mem. In Opp., pp. 7-8) In their claim for rescission, Plaintiffs allege the OA mischaracterizes their status as employees, and claim entitlement to compensation for all of the business expenses FedEx required them to bear, for all of the employment taxes, unemployment compensation and workers' compensation FedEx did not pay, and the value of their services as employees. Plaintiffs further seek entry of a declaratory judgment in their favor declaring FedEx's practices to be unlawful and providing for recovery of all sums determined by the Court to be owed by FedEx to Plaintiffs.

FedEx argues that Plaintiffs' claims for rescission and declaratory judgment fail because Plaintiffs terminated the OA with FedEx that was the basis for their claims. (Consol. Mem. in Supp., pp. 9-10) In response, Plaintiffs argue their claims are valid because they were brought before FedEx terminated the OAs for these Plaintiffs and moved to an "independent service provider" model. (Rev. Mem. In Opp., p. 8) In either case, neither Wells nor Smith dispute they are not currently parties to

the OA at issue in this case. However, both of them are still employed by FedEx. (*Gray* Doc. No. 215; *Wells* Doc. No. 124 (FedEx SUF), ¶ 31; Smith Depo., 16: 22-25; Wells's Linehaul OA). Further, it appears to the Court that the relief Plaintiffs seek has essentially been granted them by virtue of the Court's ruling on their motion for partial summary judgment. Although these claims may be moot, for purposes of this Order, the Court will deny FedEx's motion for summary judgment on the rescission and declaratory judgment claims of *Wells* Plaintiffs Wells and Smith.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motions to Strike Defendant's Consolidated Response to Plaintiffs' Omnibus Statements of Uncontroverted Facts [309, 188] and Plaintiffs' Individual Statements of Uncontroverted Material Facts. [310, 189] are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motions for Partial Summary Judgment as to Employment Status [209, 113] are **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant FedEx Ground Package System, Inc.'s Consolidated Motion for Summary Judgment [212, 122] is **GRANTED** in part and **DENIED** in part as follows:

As to Plaintiffs' claims for fraudulent misrepresentation (*Gray* Compl., Count I; *Wells* Amended Compl., Count II), the motion is **DENIED**.

As to Plaintiffs' claims for wages/overtime (*Gray* Compl., Count II; *Wells* Amended Compl., Count I), the motion is **GRANTED** as to *Gray* Plaintiffs Arbutti, Blackmon, Brown, Candela, Hill, Holmes, Patton, Sheffer, Tenison, Tichenor, and Tucker, and *Wells* Plaintiffs Cooke, Moore, and Jacobson.

As to the claims of *Wells* Plaintiffs Wells and Smith for rescission and declaratory judgment (*Wells* Amended Compl., Counts III and IV), the motion is **DENIED**.

**IT IS FURTHER ORDERED** that a telephone conference with counsel is scheduled for

**Friday October 18, 2013 at 10:00 a.m** to set these cases for trial and establish trial procedures.


Dated this 27th day of September, 2013.


_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE